IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PEDRO LOZANO,** | : | No. 3:06cv1586 |
| **CARLOS FUENTES,** | : | |
| **HUMBERTO HERNANDEZ,** | : | (Judge Munley) |
| **ROSA LECHUGA,** | : | |
| **JOSE LUIS LECHUGA,** | : | |
| **JOHN DOES 1-4,** | : | |
| **JANE DOES 1-2,** | : | |
| **JOHN DOE 5, A MINOR, BY HIS** | : | |
| **PARENTS,** | : | |
| **JOHN DOES 6, A MINOR, BY HIS** | : | |
| **PARENTS,** | : | |
| **JANE DOE 3, A MINOR, BY HER** | : | |
| **PARENTS,** | : | |
| **JANE DOE 4, A MINOR, BY HER** | : | |
| **PARENTS,** | : | |
| **BRENDA LEE MIELES,** | : | |
| **CASA DOMINICA OF HAZLETON,** | : | |
| **INC.,** | : | |
| **HAZLETON HISPANIC BUSINESS** | : | |
| **ASSOCIATION, and** | : | |
| **PENNSYLVANIA STATEWIDE** | : | |
| **LATINO COALITION,** | : | |
| **Plaintiffs** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF HAZLETON,** | : | |
| **Defendant** | : | |

## **MEMORANDUM**

Before the Court is plaintiffs' motion for a temporary restraining order.[1]

---

[1] Though defendant received notice of plaintiff's motion for a temporary restraining order, we decline to convert that motion to one for a preliminary injunction under Rule 65(a)(1) of the Federal Rules of Civil Procedure. The Third Circuit Court of Appeals has held that notice of a motion for a preliminary injunction that offers insufficient time for the adverse party to prepare for a hearing fails to satisfy due process requirements. See Anderson v. Davila, 125 F.3d 148, 156 (3d Cir. 1997) (holding that "The

(Doc. 30).  The matter has been briefed and argued and is ripe for disposition.

**Background**

In the instant motion, the plaintiffs challenge the legality of two ordinances enacted in Hazleton, Pennsylvania.  The first, Ordinance 2006-13 requires all occupants of rental units (as those terms are defined in the ordinance) to obtain an "occupancy permit."  In order to obtain such a permit, an applicant must provide, inter alia, "proper identification showing proof of legal citizenship and/or residency."  (Pl. Ex. A, Ordinance 2006-13, Section 7(b)1(g)).   The second Ordinance is entitled the Illegal Immigration Relief Act

---

Supreme Court has observed that [Rule 65(a)(1)] requires, at the very least, 'a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare such opposition.'") (quoting Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 432 n. 7 (1974)); see also Sims v. Greene, 161 F.2d 87, 88 ("no preliminary injunction shall be issued without notice to the adverse party.  Notice implies an opportunity to be heard.  Hearing requires trial of an issue or issues of fact.").

   Here, plaintiff filed a combined motion for a TRO and preliminary injunction seeking to bar enforcement of several ordinances less than two days before the ordinances in question were to take effect.  We were compelled to hold a hearing on an expedited basis in order to address the impending harm plaintiffs argued enforcement would bring.  Defendant had notice of the motion, but given the lengthy nature of the memorandum in support of that motion, the complexity and fact-intensive nature of the issues involved, and the short amount of time available for defendant to respond, we could not provide a hearing on the merits of a preliminary injunction that would protect defendant's due process rights.  Accordingly, we will treat plaintiff's motion as a request for a temporary restraining order.

2

Ordinance, Ordinance 2006-18.   This ordinance is aimed at preventing businesses from employing or harboring illegal aliens.   (Pl. Ex. B, Ordinance 2006-18).   The instant temporary restraining order seeks to enjoin the enforcement of these ordinances, which is scheduled to begin on November 1, 2006.

**Discussion**

The Third Circuit Court of Appeals has outlined four factors that a court ruling on a motion for a preliminary injunction must consider: (1) whether the movant will be irreparably injured by denial of the relief; (2) whether granting preliminary relief will result in even greater harm to the nonmoving party; (3) whether granting the preliminary relief will be in the public interest; and (4) whether the movant has shown a reasonable probability of success on the merits. Crissman v. Dover Downs Entertainment Inc., 239 F.3d 357, 364 (3d Cir.2001). These same factors are used to determine a motion for a temporary restraining order.  Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D.Pa.1994).   These factors merely "structure the inquiry" and no one element will necessarily determine the outcome. The court must engage in a delicate balancing of all the elements, and attempt to minimize the probable harm to legally protected interests between the time of the preliminary

injunction to the final hearing on the merits. Constructors Association of Western Pa. v. Kreps, 573 F.2d 811, 815 (3d Cir.1978). The movant bears the burden of establishing these elements. Adams v. Freedorm Forge Corp., 204 F.3d 475, 486 (3d Cir. 2000).

We will address each of these issues *seriatim*

**1) Irreparable injury**

The first factor to be weighed is whether the plaintiffs will be irreparably injured if the temporary restraining order is not granted. Crissman, 239 F.3d at 364. Usually, a preliminary injunction will be denied if it appears that the applicant has an adequate alternative remedy in the form of money damages. A.L.K. Corporation v. Columbia Pictures Indus., Inc., 440 F.2d 761 (3d Cir.1971).

After a careful review, the threat of irreparable injury is present in the instant case. For example, Plaintiff Jane Doe 1 risks being evicted from her apartment along with her two young children, although not an "illegal alien" under the laws of the United States. (Am. Compl. ¶ 34 - 39). Plaintiffs John Does 5 - 6 and Jane Does 3- 4 are minor school-age children residing with their parents in Hazleton, who may be forced to leave Hazleton and their schooling if the ordinances are enforced. (Am. Compl. 40-41). Plaintiff

Brenda Lee Mieles is a United States citizen who may be evicted from her residence because of her inability to establish her citizenship. (Am. Compl. ¶ 42 - 43). Plaintiffs Rosa and Jose Luis Lechuga have suffered and continue to suffer a great loss of business in their store and restaurant located in Hazleton, which they blame on the ordinances. (Am. Compl. ¶ 15 - 19). A monetary price cannot be placed on such matters as plaintiffs' housing, livelihood and education. Therefore, monetary damages would not be sufficient to make the plaintiffs whole, and the plaintiffs' risk irreparable injury if the temporary restraining order is not granted. We find that this factor weighs heavily in favor of granting the temporary restraining order.

**2) Harm to the Non-Moving Party**

The second factor used by courts to determine whether to grant injunctive relief is "whether granting preliminary relief will result in even greater harm to the non-moving party" than to the movant. Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999). The City argues that the ordinances related to illegal immigration are designed to prevent problems of social disorder and chaos that city leaders connect to the presence of illegal aliens in Hazleton. In the "Findings and Declaration of Purpose" that accompany the Illegal Immigration Relief Act Ordinance, the City contends

that "illegal immigration leads to higher crime rates, subjects our hospitals to fiscal hardship and legal residents to substandard quality of care, contributes to other burdens on public services . . . and diminishes our overall quality of life." Ordinance 2006-18 § 2(C).  In statements to newspapers, the mayor of Hazleton has asserted that the illegal immigrants have created crime and disorder in the town: "They try to recruit these children into gangs; we're having graffiti sprayed on houses now."  Ellen Barry, *City Vents Anger at Illegal Immigrants*, LOS ANGELES TIMES, July 14, 2006, at A1.  The city passed the ordinance, the mayor claims, partly in response to an incident where four illegal Dominican immigrants were arrested in connection with the shooting of a 29-year-old man.  Id.

  We find that this potential harm to the city is not greater than the harm faced by the plaintiffs from enforcement of the ordinances.  Plaintiff has offered, in the form of affidavits, statements of the concrete harm faced by various individuals from the enforcement of the ordinances.  Defendant, to the contrary, has offered only assertions that violent crime in Hazleton is a product of illegal immigration and that the city faces higher costs for social services because of the presence of undocumented persons.  In a newspaper interview, the Mayor admitted that he had no statistics to support his claims of

increased crime related to illegal immigration, nor even any numbers on how many illegals had entered the City.[2]  Dan Geringer, *Bloomberg: U.S. Can't Stem Immigration Tide*, PHILADELPHIA DAILY NEWS, July 6, 2006 at 7.

At oral argument, defendant's counsel argued that crime in the City had increased by ten percent between 2004 and 2005, but offered no evidence to connect this increase to the presence of illegal immigrants.  Counsel also offered no statistics to demonstrate the number of illegal immigrants living in Hazleton in those years. Compared to the complaints of specific harm offered by the plaintiffs, the City's vague complaints about the presence of illegal immigrants–problems that could be ascribed to a number of factors beyond the presence of people without legal documents and which might not be alleviated by the City's programs anyway–do not demonstrate that the City would face greater harm from issuing injunctive relief than the defendants would from not granting their motion.

---

[2]Some of the City's assertions about rising crime rates appear to be contradicted by other sources.  The Los Angeles Times, for instance, reported on July 14, 2006, that the violent crime rate in Hazleton as reported in Pennsylvania state statistics had actually decreased during the years when illegal immigration supposedly increased.  See Ellen Barry, City *Vents Anger at Illegal Immigrants*, LOS ANGELES TIMES, July 14, 2006, at A1 (noting that the number of total arrests in Hazleton had decreased from 1,458 in 2000 to 1,263 in 2005 and that the number of "reported rapes, robberies, homicides and assaults" had decreased as well).

### 3) The Public Interest

The third factor we must consider in deciding this matter is "whether granting the preliminary relief will be in the public interest." Allegheny, 171 F.3d at 158. We find that this factor favors granting a Temporary Restraining Order. The plaintiffs have shown they will suffer irreparable harm from enforcement of the ordinance. We find it in the public interest to protect residents' access to homes, education, jobs and businesses. No evidence offered by the City suggests that the public interest in enforcement outweighs these concerns. As stated above, defendant offers only vague generalizations about the crime allegedly caused by illegal immigrants, but has nothing concrete to back up these claims. Moreover, since the plaintiff makes claims that implicate constitutionally protected rights, the public interest would best be served by delaying enforcement of the City's ordinances until this court has an opportunity carefully to consider their constitutional implications. See Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 883-84 (3d Cir. 1997) (holding that "In the absence of legitimate, countervailing concerns, the public interest clearly favors the protection of constitutional rights").

### 4) Reasonable probability of success on the merits

The final factor to weigh in determining whether to grant a temporary restraining order is the reasonable probability of eventual success on the merits. Crissman, 239 F.3d at 364. In order to satisfy this element, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." Punnett v. Carter, 621 F.2d 578, 583 (3d Cir. 1980).

As mentioned above, the plaintiffs challenge the legality of two ordinances. The first, Ordinance 2006-13 requires all occupants of rental units (as those terms are defined in the ordinance) to obtain an "occupancy permit." In order to obtain such a permit, an applicant must provide, inter alia, "proper identification showing proof of legal citizenship and/or residency." (Pl. Ex. A, Ordinance 2006-13, Section 7(b)1(g)). The second Ordinance is entitled the Illegal Immigration Relief Act Ordinance, Ordinance 2006-18. This ordinance is aimed at preventing businesses from employing or harboring illegal aliens.  (Pl. Ex. B, Ordinance 2006-18).

Plaintiffs have raised several constitutional claims regarding the ordinances at issue. Plaintiffs assert that the ordinances violate the Supremacy Clause of the United States Constitution; the Due Process Clause

9

of the Fourteenth Amendment to the United States Constitution and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Plaintiffs also assert that the ordinances violate various statutes such as the Fair Housing Act, 42 U.S.C. §§ 3601 et seq.; Pennsylvania Home Rule Charter Law, 53 Pa.C.S. §§ 2961 et seq. and Landlord Tenant Act, 68 PENN. STAT. §§ 250.101 et seq.

The ultimate success of plaintiffs' claims will, of course, depend on the facts presented at the full hearing on the merits. At this stage of the proceeding, where plaintiff seeks a temporary restraining order on an expedited basis without benefit of a full hearing, it is sufficient to note that plaintiff has raised serious claims and there is a reasonable probability of success on the merits on one or more of the claims. Moreover, we need not analyze the likelihood of success on the merit more closely at this point as we find that the other factors weigh heavily in favor of granting the temporary restraining order. See In re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137 (3d Cir. 1982) ("where factors of irreparable harm, interests of third parties and public considerations strongly favor the moving party, an injunction might be appropriate even though plaintiffs did not demonstrate as strong a likelihood of ultimate success as would generally be required."

(internal quotation marks and citation omitted.))

**Conclusion**

For the aforementioned reasons, we find that the factors weigh in favor of granting a temporary restraining order. Accordingly, we will issue an order enjoining the enforcement of the ordinances at issue.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PEDRO LOZANO,** : | No. 3:06cv1586 |
| **CARLOS FUENTES,** : | |
| **HUMBERTO HERNANDEZ,** : | (Judge Munley) |
| **ROSA LECHUGA,** : | |
| **JOSE LUIS LECHUGA,** : | |
| **JOHN DOES 1-4,** : | |
| **JANE DOES 1-2,** : | |
| **JOHN DOE 5, A MINOR, BY HIS PARENTS,** : | |
| **JOHN DOES 6, A MINOR, BY HIS PARENTS,** : | |
| **JANE DOE 3, A MINOR, BY HER PARENTS,** : | |
| **JANE DOE 4, A MINOR, BY HER PARENTS,** : | |
| **BRENDA LEE MIELES,** : | |
| **CASA DOMINICA OF HAZLETON, INC.,** : | |
| **HAZLETON HISPANIC BUSINESS ASSOCIATION, and** : | |
| **PENNSYLVANIA STATEWIDE LATINO COALITION,** : | |
| **Plaintiffs** : | |
| : | |
| **v.** : | |
| : | |
| **CITY OF HAZLETON** : | |
| **Defendant** : | |

# **ORDER**

     **AND NOW**, to wit, this 31st day of October 2006, the plaintiffs' motion for a temporary restraining order is hereby **GRANTED**. The Defendant City of Hazleton is prohibited from enforcing the Illegal Immigration Relief Act Ordinance 2006-18 and Registration Ordinance 2006-13. A hearing on the

preliminary injunction will be set by further order of court.  This temporary restraining order shall remain in effect until November 14, 2006, unless extended by the court.

This Order shall take effect upon the posting of a $200.00 security bond by the plaintiffs with the Clerk of Court.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**