**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PEDRO LOZANO,** | : | **No. 3:06cv1586** |
| **HUMBERTO HERNANDEZ,** | : | |
| **ROSA LECHUGA,** | : | **(Judge Munley)** |
| **JOSE LUIS LECHUGA,** | : | |
| **JOHN DOE 1,** | : | |
| **JOHN DOE 3,** | : | |
| **JOHN DOE 7,** | : | |
| **JANE DOE 5,** | : | |
| **CASA DOMINICA OF HAZLETON,** | : | |
| **INC.,** | : | |
| **HAZLETON HISPANIC BUSINESS** | : | |
| **ASSOCIATION, and** | : | |
| **PENNSYLVANIA STATEWIDE** | : | |
| **LATINO COALITION,** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF HAZLETON,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

In 2008, the court found that the City of Hazleton lacked authority to enact certain ordinances aimed at regulating the presence and employment of undocumented immigrants. Now, after seven years of appeals, this case once again comes before the court. The appellate courts have fully addressed the merits, concluding that by enacting the ordinances, Hazleton overstepped its authority and entered an area of immigration preempted by federal law. The sole remaining issue is

whether the plaintiffs are entitled to an award of attorneys' fees for prevailing over the defendant. Before the court for disposition are plaintiffs' original and amended petitions for attorneys' fees and costs. The petitions seek a total $2,787,421.00 in attorneys' fees and $47,594.00 in costs for a total of $2,835,015.00.

**Background**

Defendant City of Hazleton (hereinafter "Hazleton," "city" or "defendant") enacted several ordinances to regulate the presence and employment of undocumented immigrants within the city. The ordinances, the Illegal Immigration Relief Act Ordinance (hereinafter "IIRA") and the Tenant Registration Ordinance (hereinafter "RO"), were aimed at preventing undocumented immigrants from obtaining employment or housing within the city. The defendant also passed the Official English Ordinance, which made English the official language of the city.

Plaintiffs instituted the instant action to challenge the validity of the IIRA and the RO (collectively "the ordinances") (Doc. 1, Compl.; Doc. 18, Am. Compl.). Plaintiffs also moved for a temporary restraining order and preliminary injunction. We granted the temporary restraining order on October 31, 2006, preventing Hazleton from enforcing the ordinances.

(Doc. 35, Mem. & Order dated Oct. 31, 2006).  The court combined the

hearing on the preliminary injunction with the final trial on the merits and

held a non-jury trial in March 2007.[1]

In July 2007, we issued our verdict finding that federal law

preempted the ordinances.  (Doc. 409, Decision and Verdict).  We also

concluded that the ordinances violated the plaintiffs' Fourteenth

Amendment constitutional right to due process and impermissibly

burdened the plaintiffs' right to contract under 42 U.S.C. § 1981.  (Id.)  We

permanently enjoined the city from enforcing the ordinances.  (Id.)

Plaintiffs then filed a petition for attorneys' fees and costs.  (Doc.

416).  The defendant appealed our decision to the Third Circuit Court of

Appeals.  We suspended the petition for attorneys' fees and costs pending

the outcome of the appeal.  (Doc. 412, Order of Sept. 14, 2007).

The Third Circuit affirmed our decision, finding that federal law

preempted the local ordinances.  See Lozano v. City of Hazleton, 620

F.3d 170 (3d Cir. 2010).[2]  The Third Circuit did not address the section

---

[1]  Plaintiffs and defendant entered into a stipulation regarding the
Official English Ordinance on March 2, 2007 and plaintiffs no longer
pursued this claim.  (Doc. 139, Stip. of Mar. 2, 2007).

[2] The court vacated our decision regarding one aspect of the case
that relates to the validity of a part of the employment ordinance.  This

3

1981 and due process issues because the doctrine of federal preemption provided sufficient cause to invalidate the ordinances.  Id.

The defendant appealed to the United States Supreme Court, which granted *certiorari*.  City of Hazleton v. Lozano, - U.S. -, 131 S.Ct. 2958 (2011) (Mem.).  The Supreme Court vacated the Third Circuit's judgment and remanded to the Third Circuit for further consideration in light of another case the high Court had recently decided, Chamber of Commerce of USA v. Whiting, - U.S. - , 131 S.Ct. 1968 (2011).  Id.

Upon remand, the Third Circuit once again concluded that federal law preempted the ordinances.  Lozano v. City of Hazleton, 724 F.3d 297 (3d Cir. 2013).  The defendant once more petitioned the United States Supreme Court for *certiorari*.  The Supreme Court denied the petition for certiorari on March 3, 2014.  City of Hazleton v. Lozano, - U.S. -, 134 S.Ct. 1491 (2014) (Mem.).

Subsequent to the Supreme Court's denial, the plaintiffs filed an amended petition for attorneys' fees and costs in this court.  (Doc. 443).  The parties have briefed their respective positions and the matter is ripe

---

portion of the ordinance created a private cause of action for an employee who is terminated from his employment while his employer continues to employ an undocumented worker.  The Third Circuit found that the plaintiffs did not have standing to challenge this part of the ordinance.

for disposition.

**Jurisdiction**

As this case is brought pursuant to federal statutes and the federal constitution, we have jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Legal Standard**

"In the United States, parties are ordinarily required to bear their own attorney's fees–the prevailing party is not entitled to collect from the loser.  Under this 'American Rule,' we follow a general practice of not awarding fees to a prevailing party absent explicit statutory authority." Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Human Res., 532 U.S. 598, 602 (2001) (internal quotation marks and citations omitted).  It is well established that costs, attorney's fees and expenses may be awarded to a prevailing party in federal litigation where authorized by statute, court rule, or contract.  See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975); Hall v. Cole, 412 U.S. 1, 4 (1973).

Plaintiffs seek attorneys' fees under 42 U.S.C. § 1988.  Section

5

1988 provides for the award of attorneys' fees to the prevailing party in actions involving certain statutes including section 1983 and section 1981. Specifically, section 1988 reads as follows:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]

42 U.S.C. § 1988(b).

"The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances.  Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (internal quotation marks and citations omitted).

When awarding attorney's fees and costs under section 1988 courts within the Third Circuit use the "lodestar" method.  See Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001).  The first step in using the lodestar method is to calculate "the product of the hours reasonably expended and the applicable hourly rate for the legal services."  Pub. Interest Research Grp. of N.J., Inc. v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995) (citing Hensley, 461 U.S. at 433).  After this product, known as the

"lodestar," is determined, the court has discretion to adjust the fee for a variety of reasons, most notably "the 'results obtained' by the [prevailing party.]"  Id. (citing Hensley, 461 U.S. at 434).

The "party seeking attorney fees bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 703 n.5 (3d Cir. 2005) (citing Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)).  To satisfy this burden, the party seeking fees is initially required to submit evidence supporting the hours worked and the rates claimed.  Id.  To the extent that it seeks to challenge the fees sought, "the opposing party must then object 'with sufficient specificity' to the request." Id. (quoting Rode, 892 F.2d at 1183)).

**Discussion**

As set forth above, to determine the amount of attorney's fees, we must calculate the lodestar.  Accordingly, we must determine the reasonable number of hours plaintiffs' attorneys spent on the case and then multiply that by a reasonable hourly rate.  Once we determine the lodestar, it may be reduced or increased for various reasons.  Initially, defendant attacks both the hours plaintiffs claim as reasonable, and the

7

hourly rates that the attorneys claim.  We address these arguments below as we determine the lodestar.

# I. Calculation of the lodestar

## A. Number of hours

Plaintiffs' petitions and exhibits set forth the number of hours for which they seek compensation.  Defendant argues that this number is overly inflated and that the hours that the plaintiffs spent on certain appeal work should not be included.  We find no merit to either argument.

### 1. Redundant lawyers/unreasonably inflated hours

The defendant argues that the plaintiffs' attorneys' fee petition is inflated because they seek compensation for forty-three (43) different attorneys.  These forty-three (43) attorneys worked on the case for an "astronomical" number of hours, according to the defendant–that is, cumulatively, 8,955 hours.  Defendant compares the plaintiffs' number of hours and number of attorneys to its own five (5) attorneys and 4,553 hours of work.   (Doc. 457, Def.'s Opp'n Br. at 10-11).  Defendant proceeds to argue that the plaintiffs' petition lacks sufficient detail to determine the number of redundant hours with precision.  Defendant asserts plaintiffs' attorneys claim approximately twice as many total hours

working on the case as the total number of hours that defense counsel

spent on the case.  Defendant suggests cutting the number of hours

requested by plaintiffs by approximately half.[3]

Plaintiffs counter defendant's argument with several arguments of

their own.  First, plaintiffs claim that defendant does not back up its factual

assertions with any evidence, and thus, this claim should be denied.  Next,

plaintiffs argue that even if the court addresses the merits of the issue, we

should find that defendant's arguments are not cogent.  The court

addresses these issues in turn.

### a. Evidence to support defendant's argument

Defendant premises its argument on several factual assertions,

namely that the defense spent nearly half the time on the case as

plaintiffs' counsel and that its legal team defended the case with far fewer

attorneys.  Defendant, however, has provided no evidence, such as

affidavits, to substantiate these factual assertions.  Plaintiffs argue that

because defendant presents no evidence, we should reject defendant's

argument.   We agree.

_____

[3] Defendant makes this argument while also acknowledging that the total number of hours that defendant worked "certainly does not serve as a legal cap on the number of hours that Plaintiffs may claim[.]" (Doc. 457, Def.'s Br. at 11).

The law provides that when a party makes a factual argument in opposition to a fee petition, that party **must introduce affidavits in support of those facts**. Bell v. United Princeton Prop., Inc., 884 F.2d 713, 720 (3d Cir. 1989). "[T]o the extent the challenger seeks to raise a factual issue . . . he or she must introduce affidavits averring the facts upon which the challenge is based. Affidavits are required in such instances because statements made in briefs are not evidence of the facts asserted." Id. "[W]ith respect to factual issues, the court must be presented with evidence and must make findings based on the evidence." Id.

Here, the defendant raises several factual issues in its brief, to wit, the number of defense attorneys who worked on the case, and the number of hours those attorneys spent on the case. Defendant submits no evidence to establish that these facts are true. Because defendant submitted no evidence to establish the facts it relied upon, we cannot entertain this argument, and it will be denied.

Defendant also argues that most of plaintiffs' attorneys were little more than spectators to the litigation who sat in the public seating area of the courtroom, ran the clock and accumulated thousand of hours and

added virtually nothing to the litigation of the case. (Doc. 457, Def.'s Resp. at 10). Defendant cites to nothing in the record to support its claim of these "thousands" of unreasonable hours. A review of the records does not reveal such inappropriate billing and in fact the plaintiffs indicate that time entries for attorneys' attendance at trial was adjusted when they did not play a necessary support role. (Doc. 416-8, Fiddler Decl. ¶ 9). Additionally, plaintiffs' counsel exercised their billing judgment as to rates, hours and other expenses and significantly reduced the total amount they ultimately sought. (Doc. 443-3, Walczak Suppl. Decl., ¶ 12; Doc. 443-2, Jadwat Decl. ¶ 34; Doc. 443-5, Maer Suppl. Decl. ¶¶ 10-14).

### b. Merits of the argument

Even if we did address the merits of this issue, we would find the defendant's position unconvincing. With regard to the merits, the plaintiffs point out that comparing their attorneys' work and number of hours to the defense's number of hours is simply not a valid quantitative measure to determine a reasonable number of hours. We agree.

Defendant cites to no cases that use this measure as a valid method of determining an appropriate attorney's fee. The lack of case law is understandable. The work of the two sides in this case was different.

11

Plaintiffs' counsel had to deal with seventeen different clients: fourteen individuals and three organizations. The defense had one client. Moreover, the city amended its ordinances several times evidently in response to arguments made by plaintiffs' counsel. This required plaintiffs to review the amended ordinances and make new arguments where necessary. The defendant then merely had to respond to the arguments that plaintiffs developed. As the United States Supreme Court has held, "The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." City of Riverside v. Rivera, 477 U.S. 561, 580 n.11 (1986) (plurality) (internal quotation marks and citation omitted).

Additionally, the defendant makes a very general argument with respect to the plaintiffs' total hours. The law provides that a party challenging the number of hours must provide a sufficient amount of detail for the court to review it.

The Third Circuit has explained as follows:

> [T]he adverse party's submissions cannot merely allege in general terms that the time spent was excessive. In order to be sufficient, the briefs or answers challenging the fee request must be clear in two respects. First, they must generally identify the type of work being challenged, and second

> they must specifically state the adverse party's
> grounds for contending that the hours claimed in
> that area are unreasonable.

Bell, 884 F.2d at 720.

Here, defendant has not made challenges to specific items in the fee petition.  It merely raises the general argument that the plaintiffs spent too much time on the case.  Defendant argues that plaintiffs' records fail to provide enough detail to identify with precision the redundancy in the work and the exact number of redundant hours so as to make specific objections.  We disagree.

 A fee petition must be "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." Rode, 892 F.2d at 1190 (internal quotation marks and citation omitted). Here, the plaintiffs' time records provide sufficient specificity.  The plaintiffs' time records generally provide the attorney's name, the activity that the attorney engaged in and the amount of time spent on that activity. Plaintiffs have, thus, provided sufficient information for the defendant to make specific objections.

Defendant, however, failed to object to any specific time record. As no specific objections were made, we need not, and indeed do not have the discretion to, address each item in plaintiff's time records specifically.

Id. (noting that a court may not *sua sponte* reduce the amount of the award when the defendant has not **specifically** taken issue with the amount of time spent or the billing rate).[4]

We note that a review of the records, in light of the type of work involved in this case, demonstrates that the plaintiffs' requested time is reasonable.  Plaintiffs' attorneys confronted a very vigorous, and at times contentious, defense to their lawsuit.  Plaintiffs researched and developed new arguments in this case, which was one of the first in the country dealing with the issue of local control over immigration issues.  Plaintiffs' court filings were well written and researched.   During the non-jury trial in the matter, which lasted approximately two weeks, plaintiffs' counsel demonstrated a full grasp of the law and the issues before the court.   We

---

[4] Defendant indicates that "[t]he court has a positive and affirmative duty to conduct a thorough and searching analysis to identify excessive, redundant, or otherwise unnecessary charges." (Doc. 457, Def.'s Resp. at 5) (citing Interfaith Com. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 713 (3d Cir. 2005).  In Interfaith, however, the defendant objected to specific numbers of hours to perform various tasks for which the plaintiff's attorney sought compensation.  Interfaith, 426 F.3d at 711.  In the instant case, the defendant did not make such specific objections to the plaintiffs' petitions. Moreover, plaintiffs filed the bulk of their time records in August of 2007. Defendant filed its opposition over two thousand seven hundred days later in March of 2015.  Defendant certainly had time to conduct a thorough and searching analysis to identify and object to any excessive, redundant or otherwise unnecessary charges.

find no unreasonable time expenditures in the records submitted by the plaintiffs.[5]

Moreover, defendant's argument that its legal team defended the lawsuit with fewer people and half the hours, and thus, plaintiffs did not need so many lawyers, is not convincing. The defense did not prevail at the trial court, the Third Circuit (twice), or the United States Supreme Court. The fact that plaintiffs utilized more hours and more attorneys may be justified by the fact that they ultimately prevailed at every level. Accordingly, we will not reduce the number of hours for which plaintiffs seek to be compensated based upon this argument.

### 2. Appellate litigation

Defendant further argues that the plaintiffs should not be compensated for the time spent on much of the appeals work. Defendant does not contest an award of attorneys' fees for plaintiffs' trial court level work up through the first appeal to the Third Circuit Court of Appeals. After the first appeal, which the Third Circuit decided on September 9, 2010, defendant contends that the case became exclusively about federal preemption-a claim for which attorneys' fees are not provided. Defendant

---

[5]The number of hours is set forth in the accompanying appendices.

argues that plaintiffs are entitled to no attorneys' fees for work performed after September 9, 2010, because the issues thereafter strictly involved preemption. Plaintiffs argue that they are entitled to attorneys' fees for their work in the trial court and their work in the appellate courts.[6] After a careful review, we agree with the plaintiffs that attorneys' fees should not be limited to merely the first appeal.[7]

For purposes of deciding this issue, we will accept defendant's argument that the federal preemption claim does not fall under the attorney's fees provision of section 1988. See Gustafon v. City of Lake Angelus, 76 F.3d 778, 792 (6th Cir. 1996); Planned Parenthood of Hous. and Se. Tex. v. Sanchez, 480 F.3d 734, 738 (5th Cir. 2007). Where, however, a case involves both federal preemption issues and civil rights/constitutional issues and the plaintiff prevails on the federal preemption claim, the plaintiff may recover fees for both if the claims arise

───────────────────

[6] The work performed after September 9, 2010 was due to defendant filing two petitions of certiorari with the United States Supreme Court. The plaintiffs ultimately prevailed on the issue raised in those petitions.

[7] As noted, defendant evidently concedes that fees should be awarded for the work performed by plaintiffs' counsel prior to September 9, 2010. As set forth below, however, defendant does challenge the amount of the fees.

from a "common nucleus of operative facts". <u>Planned Parenthood</u>, 480

F.3d at 739. The Third Circuit has explained as follows:

> We have previously addressed situations where a
> plaintiff brought a § 1983 claim that supports a
> grant of attorney's fees and another claim that
> does not, and the court found in favor of the
> plaintiff on the non-fee bearing claim but did not
> address the § 1983 claim. Recognizing that courts
> will often justifiably refrain from addressing a
> constitutional question where it can be avoided, we
> have held that such a plaintiff may obtain attorney's
> fees even though the § 1983 claim was not
> decided provided that 1) the § 1983 claim of
> constitutional deprivation was substantial; and 2)
> the successful pendant claims arose out of a
> common nucleus of operative facts.

<u>Id.</u> (internal quotation marks and citation omitted).

Stated differently, the law provides that where a plaintiff prevails in a

case raising both constitutional claims that support an attorney's fee

award and claims that do not support attorney's fees, fees can be

awarded even if the court does not address the constitutional claim. In

such situations, fees can be awarded when the unaddressed claim of

constitutional deprivations are substantial and arise with the pendant non-

constitutional claims from a "common nucleus of operative fact." <u>Maher v.</u>

<u>Gagne</u>, 448 U.S. 122, 132 n.15 (1980) (quoting <u>United Mine Workers v.</u>

<u>Gibbs</u>, 383 U.S. 715, 725 (1966)). The Supreme Court has explained:

"Congress intended fees to be awarded where a pendent constitutional claim is involved, even if the statutory claim on which the plaintiff prevailed is one for which fees cannot be awarded under [section 1988]."  Id.

 In the instant case, the constitutional claims and the preemption claims all arose from a common nucleus of operative facts–namely the defendant's ordinances.  Therefore, we must determine if the claims were "substantial."

 Constitutional claims fail the substantiality test if they are frivolous or "so insubstantial as to be beyond the jurisdiction of the District Court." Hagans v. Lavine, 415 U.S. 528, 539 (1974).   Here, plaintiffs raised substantial constitutional claims.  In fact, this court ruled upon the due process claim in plaintiffs' favor.[8]  As such, we will award attorneys' fees for plaintiffs' work in the trial court and their work in the appellate court because the civil rights claims are substantial and arise from a common nucleus of operative fact with the preemption claim.[9]

_____

[8]  We additionally ruled in plaintiffs' favor on the section 1981 claim, which also supports an award of attorneys' fees.

[9] Defendant maintains that this "rule does not apply once the nature of the litigation has changed and the fee-generating claims are no longer at issue.  Once the fee-generating claims are no longer part of the briefing and no longer tied to the non-fee-generating claims, the work on the non-fee-generating claim is not subject to the award of attorney's fees."  (Doc.

18

Based on the above analysis, the court will grant the plaintiffs' request for attorneys' fees for plaintiffs' work in the district court and all the appeals in the Third Circuit Court of Appeals and the United States Supreme Court.

## B. Hourly rates

As noted above, to arrive at the lodestar figure we must multiply the reasonable number of hours spent on the litigation by a reasonable hourly rate. Hensley, 461 U.S. at 433. Defendant next challenges plaintiffs' counsels' hourly rates, arguing that the rates are greatly inflated.

To calculate a reasonable rate, we look to the prevailing market rate in the relevant community. Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001). "The prevailing party bears the burden of establishing by way of satisfactory evidence, in addition to the attorney's own affidavits that the requested hourly rates meet this standard." Washington v. Phila. Cnty. Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996) (internal citation, quotation marks and brackets omitted). "Where . . . the plaintiff has met his prima facie burden under the 'community market rate' lodestar test, and the opposing party has not produced contradictory

---

457, Def.'s Resp. at 7). Defendant cites to no authority for this proposition and our research has uncovered none.

evidence, the district court may not exercise its discretion to adjust the requested rate downward." Id. at 1036.

First we must determine whether plaintiffs met their burden of establishing the reasonable rates and then determine if the defendant has produced any contradictory evidence. If the defendant has not, then we have no discretion and must not adjust the requested rate downward.

Two different types of attorneys represented the plaintiffs: attorneys in private practice and attorneys in the public interest field. The legal analysis is slightly different for each type, and we will discuss them in turn beginning with the private practice lawyers.

### 1. Private practice attorneys

For lawyers in private practice the "starting point in determining a reasonable hourly rate is the attorneys' usual billing rate . . . ." Pub. Interest Research Grp. of N.J., 51 F.3d at 1185. Cozen O'Connor served as lead private counsel for the plaintiffs. (Doc. 416-8, Fiddler Decl. ¶ 5). Thomas Fiddler of Cozen O'Connor submitted a declaration in support of the hourly rate requested by the Cozen O'Connor staff. (Id. ¶ 7). Their attorneys who participated in the case, with their respective hourly rates, include: Thomas G. Wilkinson, Jr.- $410.00; Thomas B. Fiddler - $335;

Linda Kaiser Conley - $335.00; Doreen Y. Trujillo - $275.00; Elena Park - $235.00; and Ilan Rosenberg - $230.00.[10]

Other attorneys who are in private practice, but not associated with Cozen O'Connor, also participated in the case. These lawyers include: George Barron, Barry Dyller, and David Vaida. According to the various declarations, the hourly billing rates for these attorneys are as follows: George Barron - $195.00 (Doc. 416-13, Barron Decl. ¶¶ 3-5); Barry Dyller -$350.00 (Doc. 416-12, Dyller Decl. ¶ 6) (supported by three affidavits); and David Vaida - $250.00 (Doc. 416-14, Vaida Decl. ¶¶ 3-6). [11]

### 2. Public service attorneys

Public service attorneys do not have a usual billing rate that they charge their clients because they do not have paying clients. To determine the "community market rate" and thus the reasonableness of the requested hourly fee we "assess the experience and skill of the

---

[10] Fiddler's declaration also sets forth the reasonableness of the rates submitted by various paralegals as set forth in the Appendix. (Doc. 416-8, Fiddler Decl. ¶¶ 7-9). "Defendants do not contend that the paralegal work done for the Plaintiffs is redundant or excessive." (Doc. 457, Def.'s Response at 10, n.4).

[11]We provide here a representative sample of the hourly rates. The full list of hourly rates, along with citations to the record evidence supporting them, is set forth in the attached appendix.

21

attorneys and compare their rates to those of comparable lawyers in the private business sphere." Student Pub. Interest Research Grp. of N.J., Inc. v. AT&T Bell Laboratories, 842 F.2d 1436, 1447 (3d Cir. 1988).

The attorneys to whom we apply this rule are:  Witold Walczak, Omar Jadwat, Jennifer Chang, Shamaine Daniels and all Puerto Rican Legal Defense and Education Fund (hereinafter "PRLDEF") lawyers.

Witold Walczak, the legal director of the American Civil Liberties Union of Pennsylvania, (hereinafter "ACLUPA") submitted a declaration indicating that he requests an hourly rate of $400 which he believes is fair and reflects the prevailing community rate for civil rights lawyers of comparable skill and experience.  (Doc. 416-4, Walczak Decl. ¶¶ 4, 6-7). Subsequently, plaintiffs reduced this request to $370 to fall within the rate schedule published by the Community Legal Services, Inc. (hereinafter "CLS"). (Doc. 443, Pls.' Am. Pet. for Attorneys' Fees and Costs ¶¶ 20, 38).

Omar Jadwat, an attorney on the national legal staff of the ACLU Foundation Immigrants' Rights Project, (hereinafter "ACLUF"), filed a declaration wherein he requests an hourly rate of $300, which he believes is fair and reasonable and within the scope of rates awarded to federal court litigators of comparable skill and experience.  (Doc. 416-5, Jadwat

Decl. ¶¶ 16-17).  Plaintiffs subsequently reduced this request to $255 to fall within the rate schedule published by the CLS. (Doc. 443, Pls.' Am. Pet. for Attorneys' Fees and Costs ¶¶ 20, 38).

Jennifer C. Chang, an attorney on the national legal staff of the ACLU Foundation Immigrants' Rights Project, filed a declaration indicating that an hourly rate of $260 for the work she performed on the case is fair and reasonable.  (Doc. 416-6, Chang Decl. ¶¶ 10-11). Subsequently, plaintiffs reduced this request to $225 to fall within the rate schedule published by the CLS.  (Doc. 443, Pls.' Am. Pet. for Attorneys' Fees and Costs ¶¶ 20, 38).

Shamaine A. Daniels, an employee of the Community Justice Project, (hereinafter "CJP"), has submitted a declaration indicating that $150.00 per hour is fair and reasonable.  (Doc. 416-21, Daniels Decl. ¶ 11).

Foster Maer, the Legal Director of the Puerto Rican Legal Defense and Education Fund (hereinafter "PRLDEF") also filed a declaration. (Doc. 416-7, Maer Decl.).   He presents an hourly rate of $425.00 as fair and reasonable for himself. (Id. ¶ 13).  He also presents fair and reasonable hourly rates for other attorneys from the PRLDEF as follows:

23

Jackson Chin - $350.00 (Id. ¶ 17) (See also Doc. 416-18, Chin Decl.
¶¶ 11, 15); Lee Llambelis - $325.00 (Id. ¶ 18) (See also Doc. 416-19,
Llambelis Decl. ¶¶ 4, 14); Ghita Schwarz - $300.00 (Id. ¶ 19) (See also
Doc. 416-17, Schwarz Decl. ¶¶ 2, 6), which plaintiffs reduced to $255
(Doc. 443, Pls.' Am. Pet. for Attorneys' Fees and Costs ¶¶ 20, 38); Denise
Alvarez - $275.00 (Doc. 416-7, Maer Decl. ¶ 20) (See also Doc. 416-16,
Alvarez Decl. ¶¶ 4-5), which plaintiffs reduced to $225 (Doc. 443, Pls.'
Am. Pet. for Attorneys' Fees and Costs ¶¶ 20, 38); Richard Bellman -
$450.00 (Doc. 416-7, Maer Decl. ¶¶ 14, 23) (See also Doc. 416-15,
Bellman Decl. ¶¶ 3, 10); Christina Iturralde (legal fellow/law graduate) -
$120.00 (Id. ¶ 21); (See also Doc. 416-20, Iturralde Decl. ¶ 5); and
Marisabel Kanioras (paralegal) - $130.00 (Id. ¶ 22).

As noted, the attorneys present their own declarations where they
declare under penalty of perjury that these hourly rates are appropriate.
Under the law, however, they must submit more than their own
declaration. To that end, and in further support of these hourly rates, the
plaintiffs submitted the declaration of Thomas B. Schmidt, of counsel in
the Harrisburg office of Pepper Hamilton LLP and the attorney-in-charge
of that office. (Doc. 443-6, Schmidt Decl.). Attorney Schmidt has

practiced law for nearly forty (40) years and has "been involved in numerous *pro bono* cases as lead counsel, as co-counsel, or as local counsel supporting attorneys associated with organizations including, for example, the Public Interest Law Center of Philadelphia, the ACLU, and the Lawyers Committee on Civil Rights. Most of the *pro bono* cases in which [he has] been involved are, like the present case, considered 'impact litigation' because they apply legal principles in circumstances of substantial public controversy or developing public policy." (Id. ¶ 3).

Attorney Schmidt indicates that the rates requested by plaintiffs' attorneys are reasonable and consistent with the rates charged in the Middle District by similarly experienced and skilled attorneys. (Id. ¶¶ 9-10). Plaintiffs have thus met their initial burden. They submitted their own declarations regarding the hourly rates they requested. Additionally, they submitted the declaration of an attorney experienced in such litigation to support the hourly rate. The burden thus shifts to the defendant to produce contradictory evidence.

The defendant, however, presents no evidence. Defendant's counsel merely sets forth in its brief an amount that it asserts is its counsel's hourly rate and compares it to the amount that the plaintiffs

seek. As noted above, assertions in a brief are not evidence. Even if they were, we would need more evidence than the attorney's own declaration as to his hourly rate. Where the defendant does not produce contradictory evidence, we lack discretion to adjust the requested rates downward. Washington, 89 F.3d at 1036. Thus, we must accept the rates proposed by the plaintiff.

Defendant makes one other argument with regard to the requested fees. The city cites to an opinion from this district where the court lowered the attorney fee rate sought by some of the very attorneys who seek fees in this case. See Buck v. Stankovic, 3:07cv717, 2008 WL 4072656 (M.D. Pa. Aug. 27, 2008). In Buck, however, the defendant submitted contradictory rebuttal evidence which challenged the rate sought by plaintiff's counsel. Id. at *9. Here, defendant presents no rebuttal evidence. Moreover, the law provides that it is improper to simply rely upon the hourly rates set by a court for the attorney in previous cases in which they've appeared. Smith v. Phila. Hous. Auth., 107 F.3d 223, 226 (3d Cir. 1997).

In short, defendant has not submitted any rebuttal evidence in this case, leaving us without discretion to lower the rate for which plaintiffs

have established a prima facie case.  In fact, plaintiffs submitted over five hundred (500) pages of exhibits in support of their position.  The defendant submitted zero (0).  Ergo, the hourly rates set forth above will be accepted.

### C. Lodestar Amount

Now that we have determined the hours reasonably expended and the applicable hourly rate for the legal services, we can multiply out the lodestar amount.  The total amounts are:  $2,244,040.50 on the original petition and $527,530.40 on the amended petition for a total attorneys' fee lodestar amount of $2,771,570.90.[12]

To this amount, we add the plaintiffs' costs.  The defendant "does not contest the costs asserted by the Plaintiffs that were incurred prior to September 9, 2010." (Doc. 457, Def.'s Resp. in Opp'n to Pls.' Am. Pet. for Attys' Fees and Costs at 23).  Due to the defendant's failure to contest these costs, we will grant all the costs sought in plaintiffs' original petition:

a) Cozen O'Connor costs - $22,512.12

b) ACLUPA costs - $8,522.48

c) ACLUF costs - $5,177.75

---

[12]  For our calculation of these amounts please see the attached Appendix 1.

d) PRLDEF costs -$6,400.77

e) CJP costs - $2,879.58

Total costs from original petition: $45,492.70

(Doc. 416, Pls.' Pet. for Attys' Fees and Costs at 23).

Defendant appears to claim that any costs incurred during the appeals of the preemption issues, as set forth in plaintiffs' amended petition, should not be awarded because plaintiffs are not entitled to fees for work done beyond the first appeal. As discussed above, in section I.A.2, we find no merit to this argument. Thus, we will award the costs set forth in plaintiffs' amended petition for attorneys' fees and costs also. The amended petition seeks $2,102.00 in costs solely for the ACLU Immigrants' Rights Project. (Doc. 443, Am. Pet. ¶ 39). The total costs, including the original petition and the amended petition, are: $47,594.70.

## II. Potential lodestar adjustments

After calculating a lodestar figure, the court can adjust it upward or downward based upon various factors. Hensley, 461 U.S. at 434. Such factors include, the results achieved and adjustments "for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of successful claims." Rode, 892 F.2d at 1183. Defendant seeks

a lodestar reduction, arguing that plaintiff only partially succeeded in challenging the ordinances and plaintiffs did not prevail on several of their claims.  As set forth below, we agree with the defendant in part.

## A.  Partial success

First, defendant argues that plaintiffs achieved only limited success and the lodestar should thus be reduced.  Specifically, defendant argues that the ordinances that the plaintiffs challenged had essentially four facets: 1) an employment provision enforced by the city; 2) an employment provision enforced by a private cause of action; 3) an apartment rental provision; and 4) an English as the official language ordinance.   Plaintiffs challenged all four aspects of Hazleton's ordinances.  They only succeeded in obtaining an injunction with regard to two of them.  Accordingly, defendant argues that plaintiffs only obtained limited success, and the fee award should be adjusted downward.

Plaintiffs, on the other hand, argue that they achieved excellent results–a permanent injunction against the enforcement of the IIRA and the RO except for one portion of the IIRA, the portion that provided for a private cause of action for an employee.  After a careful review, we agree with the defendant with regard to the private cause of action, but we

disagree with them with regard to the English as the official language ordinance.

### 1. Private cause of action

First, defendant argues that plaintiffs only had partial success because the private cause of action portion of the ordinance was not invalidated.  The principal portions of the plaintiffs' case were the employment and residential components of the ordinances.  The "private cause of action" section of the employment law was never the main thrust of the plaintiffs' case.  It was, nonetheless, a portion of the case that the parties spent time on in briefing, arguing and at trial.

This private cause of action was described by the Third Circuit as:

> Section 4E of the [IIRA] makes it "an unfair business practice" for a business entity to discharge "an employee who is not an unlawful worker," if, on the date of the discharge, "the business entity was not participating in [E-Verify] and the business entity was employing an unlawful worker. [IIRA] § 4E(1).  An employee discharged under these conditions may sue the business entity under the [IIRA] for treble damages, as well as reasonable attorney's fees and costs."

Lozano v. City of Hazleton, 620 F.3d 170, 178 (3d Cir. 2010).

The Third Circuit concluded that the plaintiffs lacked standing to challenge this portion of the ordinance.  Id. at 187.  Thus, plaintiffs did not

30

prevail.  We conclude that the requested fee should be reduced

accordingly.  This portion of the case, however, is relatively minor, and we

will reduce the lodestar by ten percent (10%).  See Fox v. Vice, 563 U.S.

826, 131 S.Ct. 2205, 2216 (2011) ("The essential goal in shifting fees (to

either party) is to do rough justice, not to achieve auditing perfection.")

### 2.  English Only Ordinance

Defendant also claims that plaintiffs did not achieve full success

because the "English Only" ordinance is still in effect.  This argument is

not convincing.   In their initial complaint, the plaintiffs challenged the

"English Only" provisions of the defendant's ordinance.  Subsequently, the

City repealed that portion of the ordinance and enacted a separate

"Official English Ordinance."  Prior to the trial, the parties entered into a

stipulation with regard to the enforcement of the "Official English

Ordinance" and thereafter, the plaintiffs did not challenge the "Official

English Ordinance".  (Doc. 139, Stip. of Mar. 2, 2007).  We cannot find

that this stipulation means that the plaintiffs did not prevail on this issue.

Rather, it appears that plaintiffs prevailed through a stipulation rather than

through trial.

Therefore, we will make no reduction to the lodestar for the

stipulation regarding the enforcement of the "Official English Ordinance." We will, however, reduce the lodestar by ten percent (10%) based upon the argument that plaintiffs only partially prevailed due to the private cause of action section of the ordinances. This ten percent (10%) reduction will apply to both the original petition and the amended petition.

## B. Unsuccessful claims

Similarly, defendant asserts a lodestar reduction is warranted because plaintiffs only prevailed on several of the claims that they raised in their complaint. Plaintiffs' amended complaint raised nine (9) claims. We ruled in plaintiffs' favor on the following: Count I, federal preemption; Count II, procedural due process; Count V, section 1981; Count VI, Home Rule Charter (in part); and Count IX, police powers. (Doc. 409, Memo. dated July 26, 2007 at 186-88). Plaintiffs did not prevail on the following claims: Counts III, Equal Protection; Count IV, the Fair Housing Act; Count VI, Home Rule Charter (in part); Count VII, the Landlord Tenant Act; and Count VIII, violation of privacy rights. (Id.)

Defendant avers that plaintiffs raised nine (9) causes of action but only fully succeeded on four (4). Thus, defendant argues that any time litigating the remaining unsuccessful claims should not be calculated as

part of the lodestar.  We agree with the defendant's position, and will use our discretion to adjust the award of fees accordingly.

The law provides that "where a plaintiff prevails on one or more claims but not on others, fees shall not be awarded for time that would not have been spent had the unsuccessful claims not been pursued."  Lanni v. N.J., 259 F.3d 146, 151 (3d Cir. 2001) (citing Hensley, 462 U.S. at 436-37).  Thus, a plaintiff may bring a case with different claims based on different facts and legal theories.  If he prevails on only some of the claims, he cannot receive attorney's fees for the unsuccessful claims.  Hensley, 461 U.S. at 434-35.

Specifically, the Supreme Court has explained:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories.  In such a suit, even where the claims are brought against the same defendants-often an institution and its officers[;] . . .counsel's work on one claim will be unrelated to his work on another claim.  Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in the pursuit of the ultimate result achieved.  The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

Id. (internal quotation marks and citation omitted).

The separate claims, however, may "involve a common core of facts or will be based on related legal theories." Id. at 435. In such cases, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Id.

In the instant case, defendant is correct in noting that plaintiffs did not prevail on every claim. Defendant further asserts that the claims that the plaintiffs did not prevail on were distinct in all respects from the claims on which the Plaintiffs succeeded. (Doc. 457, Def.'s Opp'n Br. at 20-21). A review of plaintiffs' unsuccessful claims reveals that they are not completely distinct from the claims on which they did prevail. All the claims arose from the ordinances. The unsuccessful claims, however, are different causes of action and generally required different proof and legal analysis. Thus, we will reduce the lodestar based on plaintiffs' failure to prevail on all claims.

We cannot with mathematical precision determine the amount of plaintiffs' attorneys' time were spent on the unsuccessful claims. The United States Supreme Court has explained, "Fee-shifting to recompense

. . . a plaintiff . . . is not all-or-nothing." <u>Fox v. Vice</u>, 563 U.S. 826, 131 S.Ct. 2205, 2216 (2011).   "But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." <u>Id.</u>  Accordingly, we will reduce the lodestar by an amount that seems fair based upon our familiarity with and understanding of the litigation.  <u>See id.</u>   We will adjust the lodestar of the original petition downward by forty-five percent (45%) to compensate for the unsuccessful claims.  As these matters were also addressed by the parties in the initial appeal to the Third Circuit, we will reduce the lodestar of the amended petition by twenty percent (20%).[13]

### C.  Adjusted Lodestar

As set forth above, we will decrease original petition lodestar by a total of fifty-five percent (55%)- that is a ten percent (10%) reduction for partial success and forty-five percent (45%) reduction for unsuccessful claims.   We will also decrease the amended petition lodestar by thirty percent (30%) - that is a ten percent (10%) reduction for partial success

---

[13] We also bear in mind in making this adjustment that the private attorneys who appeared in the case did so *pro bono* without the same expectation of monetary compensation as they would have had with a paying client.

and a twenty percent (20%) reduction for unsuccessful claims.   After these reductions are made, the attorneys' fees we will grant on the original petition is $1,009,818.23, and the attorneys' fees we will grant on the amended petition is $369,271.28.  Accordingly, the total attorneys' fee award will be $1,379,089.51.  See Appendix 2.

## III.  Extension of the award for fees and costs over time

Finally, defendant argues that Hazleton is in severe financial distress and on the verge of bankruptcy.  A large lump sum of attorneys' fees would likely force the city into bankruptcy and receivership. Defendant asks the court to make the award of fees payable over a number of years, with no yearly payment greater than $100,000. Defendant cites to nothing as precedent to allow us to spread the award of attorneys' fees over time, and we find that defendant's request is unreasonable.

We have calculated the attorneys' fee award to be $1,379,089.51. Under defendant's proposal, it would take at least fourteen (14) years to satisfy the fee award.  Additionally, we would be faced with adding interest to the award, which would inevitably extend the payments over even more years.

The court is sympathetic to the defendant's financial condition. Congress, however, did not include language in section 1988 to suggest that courts consider a municipality's financial condition and budgetary concerns when fashioning an attorney's fee award. In fact, the financial inability to pay an attorney fee award is not a reason for reducing such award. Inmates of Allegheny Cty. Jail v. Pierce, 716 F.2d 177, 180 (3d Cir. 1983); see also Coppedge v. Franklin Cnty. Bd. of Ed., 345 F. Supp. 2d 567, 571 (E.D.N.C. 2004) ("[M]any defendants in civil rights cases are public entities, facing the same budgetary constraints as the school system in this case–a scenario Congress contemplated when passing § 1988.").

Municipalities, regardless of their fiscal health, have no discretion to enact improper laws. When such laws are passed and successfully challenged, the municipality then becomes liable for the plaintiffs' attorneys' fees and costs.

Plaintiffs have, however, suggested the court not make payment due until January 15, 2016, thus providing the parties an opportunity to reach an agreement on a payment schedule for the fees. The court concludes that this is a reasonable offer because it appears that a payment schedule

is best left to the parties to work out themselves.  Thus, we will grant

plaintiffs' request to make payment due on January 15, 2016, so that the

parties will have several months to agree on a payment schedule.

**Conclusion**

In conclusion, we are tasked with calculating the reasonable

attorneys' fees for plaintiffs' attorneys.  To do so, we have calculated the

"lodestar" by determining a reasonable hourly rate for the attorneys and

multiplying it by the number of hours that have been expended.  Plaintiffs

presented evidence substantiating the number of hours worked and

reasonable hourly rates.  Defendant did not present any contrary

evidence, and we will adopt the numbers provided by the plaintiffs.

Once the lodestar is found, the defendant has the opportunity to

convince us to lower it.  We have adjusted the lodestar downward by more

than one million dollars  based upon partial success and unsuccessful

claims.  For the above-stated reasons, we shall award plaintiffs

$1,379,089.51 in attorneys' fees and  $47,594.00 in costs.   An

appropriate order follows.


**Date: <u>Oct. 6, 2015</u>**                    **<u>s/ James M. Munley</u>**
                                       **JUDGE JAMES M. MUNLEY**
                                       **United States District Court**